This is an action for $25,000 damages for personal injuries. The jury found for defendant and the trial court, of its own motion during the trial term, granted plaintiff a new trial. Defendant has appealed from this order.
The order granting the new trial made a finding of the facts, upon which it was based, and was, as follows:
"The matter of a new trial in the above-entitled cause coming on regularly for hearing, the court finds the following facts:
"That there was drawn from the general jury-wheel, for service as a juror for the week beginning November 15th, 1937, the name of W.M. Bennett; that thereupon a jury summons was issued to and in the name of W.M. Bennett; that Herbert Daniel obtained possession of said summons, and appeared for jury service, having same in his possession; that said Daniel was present when the general panel was qualified, and that he remained in the jury waiting room; that thereafter the judge of Division Number One made a request for eighteen jurors to try this cause; that the card with the name of W.M. Bennett was drawn from the small jury-wheel by the clerk of the Jury Commission; that Herbert Daniel answered the call of W.M. Bennett when the panel was called under the aforesaid order, and appeared in Division One with the remainder of the panel; that *Page 461 
the clerk of Division One called the names of the jurors, including W.M. Bennett, for the purpose of having them take their place in the jury-box, at which time Herbert Daniel answered present when the name W.M. Bennett was called, said Daniel taking his place in the jury-box; thereafter, said Daniel, with the other members of the panel, were duly sworn, and upon said W.M. Bennett's name being called by counsel, Herbert Daniel responded to said name and stated that his name was W.M. Bennett, and further impersonated said Bennett in qualifying as a juror; that said W.M. Bennett's name was left upon the panel of jurors to try this cause, and again answered present, and took his seat in the jury-box when the named W.M. Bennett was called; whereupon said Herbert Daniel was sworn, with the other members of the jury; that said Herbert Daniel sat through the trial of said cause, and, at the conclusion of the trial of said cause, same having been duly submitted to said jury, the said jury retired to their jury-room to deliberate thereon; and thereafter eleven members of said jury returned into court their verdict in favor of the defendant Baltimore Hotel Company, each of said jurors so agreeing to said verdict signing his name thereto, and said Herbert Daniel signing the name of W.M. Bennett to said verdict.
"That subsequent to said trial, and on December 2d 1937, said Herbert Daniel appeared in this court, and admitted under his oath that his name is Herbert Daniel, and not W.M. Bennett, and that he impersonated said W.M. Bennett in the selection of the jury and at the trial of the above cause, and that he had untruthfully stated to the court and to counsel for the parties hereto, upon his voir dire examination, that his name was W.M. Bennett.
"The court further finds that said Herbert Daniel was duly qualified as a juror by the Jury Commission of Jackson County, Missouri, and that his name was in but was not drawn from the general jury-wheel and he was not summoned as a juror for the November Term, 1937, of this court; that therefore said Herbert Daniel was an interloper, and fraudulently and wrongfully appeared and qualified as a juror in this case, in the name of W.M. Bennett, and, therefore, without right or authority did sit as a juror and participate in the trial of this cause, and signed the verdict returned therein.
"The court finds as a matter of law that by reason of the foregoing the aforesaid act of said Herbert Daniel was a fraud and imposition upon the court and the parties litigant.
"Wherefore, by reason of said facts so found by the court, the court of its own motion hereby grants a new trial and rehearing of this cause."
Defendant contends that the court had no authority to grant a new trial because no objection was made to this fraudulent juror, no exception was taken at the trial, and no such ground was stated in the motion for new trial; and because more than the number of *Page 462 
jurors, required to return a verdict, signed this verdict in addition to this fraudulent juror. Defendant says that the court, therefore, acted arbitrarily and unreasonably and that its order cannot stand even though made during the trial term.
[1] There can be no question about the inherent power of the trial court to set aside a verdict and grant a new trial, at any time during the term in which it is returned, in the reasonable exercise of its discretion, irrespective of grounds stated in a motion for new trial. [Beer v. Martel, 332 Mo. 53,55 S.W.2d 482; Utz v. Dormann, 328 Mo. 258, 39 S.W.2d 1053; State ex rel. Conant v. Trimble, 311 Mo. 128, 277 S.W. 916; Marsala v. Marsala, 288 Mo. 501, 232 S.W. 1048; State ex rel. Iba v. Ellison, 256 Mo. 644, 165 S.W. 369; Ewart v. Peniston,233 Mo. 695, 136 S.W. 422.] This power is "subject only to the qualifications that it must give the parties reasonable notice, allow them to be heard, and act upon reasonable grounds and not arbitrarily." [Kelso v. W.A. Ross Construction Co., 337 Mo. 202,85 S.W.2d 527; In re Zartman's Adoption, 334 Mo. 237,65 S.W.2d 951.] Exceptions, while essential to preservation for appellate review of matters outside the record proper, are immaterial in considering the propriety of the trial court's action in granting a new trial, because "the trial court may grant a new trial on account of any erroneous ruling made by it, whether excepted to or not." [Sakowski v. Baird, 334 Mo. 951,69 S.W.2d 649; Bradley v. Becker, 296 Mo. 548, 246 S.W. 561; Beer v. Martel, 332 Mo. 53, 55 S.W.2d 482.] Newly discovered evidence (which is certainly not a matter requiring exception during the trial) is also a ground for new trial; and "`where it is shown that matters which might establish prejudice or work a disqualification (of a juror) were actually gone into on thevoir dire, and false answers were given, or deception otherwise practiced, the court will be permitted to consider the question on the motion for a new trial (or without it during the trial term), either upon oral testimony taken at a hearing on the motion, or by affidavits;' because `the situation is closely akin to that when a new trial is sought for newly discovered evidence; and the complaining party is not to be left without a remedy for the want of a prior objection and exception, when the disqualification of the juror was one which he by due diligence could not have learned sooner.'" [Massman v. Kansas City Public Service Co. (Mo.), 119 S.W.2d 833, l.c. 838; see also 46 C.J. 89, sec. 47, also sec. 51; 20 R.C.L. 238, sec. 24.] There is, of course, no contention or intimation that either of the parties or their attorneys knew or had any reason to know of this fraud until after the trial and after time for filing motion for new trial. Failure to object or take an exception before the jury was sworn (Sec. 8747, R.S. 1929) or failure to state such ground in the motion for new trial is immaterial here, because the court granted the new trial on its own *Page 463 
motion during the trial term. Since it appears from the record in this case that there was a hearing, at which all parties appeared and at which evidence was heard, before the court made its order granting a new trial, the only question here is whether the court had any reasonable ground for its action.
[2] The basis of defendant's argument, that this action was arbitrary and unreasonable, is that more than nine jurors signed the verdict without counting the fraudulent juror. [Defendant cites State v. Breen, 59 Mo. 413; State v. Reilly,4 Mo. App. 392; Knight v. Kansas City, 138 Mo. App. 153, 119 S.W. 990; State v. Wilson, 230 Mo. 647, 132 S.W. 238; Allen v. C., R.I. P. Railway Co., 327 Mo. 526, 37 S.W.2d 607; State v. Taylor (Mo.), 40 S.W.2d 1079; State v. Rouner, 333 Mo. 1336,64 S.W.2d 916; Kelso v. W.A. Ross Const. Co., 337 Mo. 202, 85 S.W.2d 827; State v. Watson (Mo.), 104 S.W.2d 272; Massman v. K.C. Pub. Serv. Co. (Mo.), 119 S.W.2d 833; and Toledo Consolidated St. Ry. Co. v. The Toledo Electric Street Ry. Co., 12 Ohio C.C. Reports 367.] However, all of these are cases where the trial court overruled the motion for new trial. The question on appeal was whether prejudicial error, properly preserved for appellate review, appeared from the record before the appellate court. They are also cases where the complaining party failed to examine the questioned juror concerning the matter which it was later alleged disqualified him. It was held that this constituted a waiver of that disqualification. As we said in the Massman case, there is an exception where the matter is gone into on voir dire and false answers are given. Here the fraudulent juror was asked if his name was W.M. Bennett and he said it was. He was asked "about his residence and his business," and "he stated he lived at 2108½ East Ninth Street, Kansas City, Missouri, and was engaged in the restaurant business — that being the business of W.M. Bennett." He also signed the name of W.M. Bennett to the verdict. There can be no question of waiver here.
[3] The right of trial by jury guaranteed by our Constitution, if it is to be worth anything, must mean, as this court has said, "the right to a fair and impartial jury." [Privitt v. St. Louis-San Francisco Ry. Co. (Mo.), 300 S.W. 726.] As this court also said, in that case, "to prescribe whatever will tend to procure the impartiality of jurors in the trial of cases, is not only within the competency of the Legislature, but is one of its highest duties." Certainly it is also one of the highest duties of courts, in the administration of the law concerning selection of jurors and juries, to seek to accomplish that purpose by enforcing the qualifications prescribed by statute. Certainly also a party is entitled, unless he waives it, to a jury of twelve impartial qualified men. Even though three-fourths of them can decide a civil case, parties are entitled to have that decision, whether for them or against them, based on the honest deliberations of twelve *Page 464 
qualified men. A man who uses dishonest means to get on a jury, does not usually do so for the purpose of honestly deciding the case on the law and the evidence. Of course, verdicts should not be set aside, when failure to discover lack of qualifications is due to neglect of the complaining party; but this court, and the Courts of Appeals, have reversed judgments even though only one juror dishonestly concealed his disqualification. [Gibney v. St. Louis Transit Co., 204 Mo. 704, 103 S.W. 43; Ullom v. Griffith (Mo. App.), 263 S.W. 876; State v. Ross, 29 Mo. 32.] In none of these cases was there so gross and intentional a fraud as here. Defendant points to the court's finding that "Daniel was dully qualified as a juror by the jury commission of Jackson County," and says "there is no question of any disqualification of said juror as provided in Sections 8746 and 8803, R.S. 1929," and that plaintiff was, therefore, not harmed because there were twelve qualified jurors in the box. We cannot agree with this contention. [4] Section 8746 requires more of a juror than merely being "a male citizen of the state, resident of the county . . . over twenty-one years of age." It also requires that he be "sober and intelligent, of good reputation . . . and otherwise qualified." Certainly the words "otherwise qualified" mean both "impartial" as stated in the Constitution (Const. Art. II, Sec. 22) and "judicious" as stated in Section 8750. These words have a well recognized meaning as will be seen upon consultation of any dictionary. But the least they require is a juror who is not deliberately dishonest, and this fraudulent juror's actions clearly demonstrated that he lacked this minimum qualification. We fully agree with the trial court that "as a matter of law" this juror's conduct "was a fraud and imposition upon the court and the parties litigant."
In that situation, certainly its prejudicial effect upon plaintiff and what should be done about it was, at least, a matter within the trial court's judicial discretion. We have said that "such a discretion does not mean a mere whim or caprice, but it means an honest attempt, in the exercise by the judge of his duty and power to see that justice is done, to establish a legal right." [Johnson v. Grayson, 230 Mo. 380, 130 S.W. 673.] We have said that the court may properly exercise such discretion during the trial term, to set aside a verdict "if the trial judge believes a fair trial has not been had, or for any cause there has been a failure of justice." [Ewart v. Peniston, 233 Mo. 695, 136 S.W. 422.] We have also said that "when the motion issustained and the requested relief is granted, on reviewing such action, in considering the grounds stated in the motion upon which this action is based `this court will be more liberal in upholding the court's action'"; and that "this is because the power of the trial court to grant a new trial is an exercise of its judicial discretion, which may be based upon matters known to the court (often said to be in the breast of the court) because the trial judge participated in the trial *Page 465 
and knew what took place, much of which cannot be preserved in any bill of exceptions or record." [Castorina v. Herrmann,340 Mo. 1026, 104 S.W.2d 297.] So in this case, the trial judge knew what kind of a jury he had, what the appearance and actions of the fraudulent juror were, and what was the atmosphere of the trial. This fraudulent juror voted with the prevailing side, and the trial court was in a better position than we could be, to determine both what his motives were and what his influence on the result may have been. Defendant made no showing on this matter. Certainly conditions, which would make it possible for such an interloper to impersonate an actual juror (a man with an established business), without his knowledge and without the parties and their attorneys learning of it, would not tend to inspire confidence in the results reached by juries selected while they existed. Such conditions might well make any jury trial, while they continued, a farce, and undoubtedly required drastic action by the court to end them. We, therefore, cannot say that the court acted arbitrarily and without any reasonable ground; but hold instead that this gross and willful fraud perpetrated on the court and the parties by this fraudulent juror was a reasonable ground for granting a new trial on the court's own motion during the trial term.
The order granting a new trial is affirmed. Bradley andDalton, CC., concur.